IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Patrick Brooks, *et al.*, | :  |
| | : Case No. 1:21-cv-665 |
| Plaintiffs, | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : Order Denying Motion for Preliminary |
| Butler County, *et al.*, | : Injunction |
| | : |
| Defendants. | : |

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. 2). Defendants filed a Memorandum in Opposition (Doc. 11), Intervenor filed a Response in Opposition (Doc. 14), and Plaintiffs filed their Replies (Docs. 16, 17). This case concerns zoning variances approved by the Butler County, Ohio Board of Zoning Appeals ("Zoning Board") in favor of Intervenor CD DG Germantown, LLC ("DG Germantown") regarding real property located at 8383 Keister Road, Middletown, Ohio 45042 ("the Property"). DG Germantown is developing a Dollar General retail store at the Property. Plaintiffs, who live on land adjacent to or near the Property, allege that the Zoning Board improperly granted the zoning variances because one member who voted in favor, Defendant Alan Daniel, had a financial conflict of interest. Plaintiffs assert that Alan Daniel's self-serving vote for the variances constituted a violation of procedural due process. The Court has entered a Temporary Restraining Order ("TRO") enjoining until November 17, 2021 the variances and any permits issued to effectuate the variances granted for the Property. For the reasons that follow, the Court now will **DENY** the Motion for Preliminary Injunction.

1

I.  **BACKGROUND**

A.  **Factual History**

The relevant facts are largely undisputed. The Property is located in Butler County, Ohio. In 2013, Alan Daniel transferred the Property to his son, Todd Daniel, but he retained a mortgage upon it. (Doc. 2-2 at PageID 57–58.) Alan Daniel and Todd Daniel retained their ownership interests in the Property at least through February 16, 2021. The Property was and is zoned B-2 as a community business district. (Doc. 2-6 at PageID 80.) B-2 districts are intended "to reserve certain land areas for community and highway oriented retail and service establishments which serve the residents of a number of neighborhoods." Butler County, Ohio, Rural Zoning Resolution ("Zoning Resolution"), § 16.01 (Revised Jan. 10, 2013).

Plaintiffs Patrick Brooks, Angela Brooks, Tonja Black, and James Back live on land that is adjacent to the Property. Plaintiffs Connor Webner, Michael Tinch, Shannon Tinch, Karen Frank, and Bret Frank all live only a block or so from the Property.[1] Bret Frank estimates that his home is less than 800 feet from the proposed Dollar General store. (Doc. 17-1 at PageID 567.)

On November 19, 2020, DG Germantown entered into a lease with a tenant to operate the Dollar General store it intended to develop on the Property. (Doc. 14-1 at PageID 307, 309.) The lease requires it to complete construction of the Dollar General store by January 13, 2022 or pay daily liquidated damages in the amount of $897.60 for each day delivery of the premises is late. (*Id.*) On January 27, 2021, DG Germantown filed Application BZA21-08V with the Zoning Board for five variances for the Property to enable its project: (1) allow more than ten

---

[1] There is still some confusion in the record. Plaintiffs provide an aerial photograph that appears to show Webner's property is adjacent to the Keister Property. (Doc. 16 at PageID 412.) Defendants assert in their Memorandum in Opposition that Webner is an adjacent landowner, but that he moved in after the disputed vote at the February 2021 Zoning Board meeting. (Doc. 11 at PageID 107.)

2

percent parking in the front yard; (2) waive the landscaping requirement; (3) reduce the front yard setback requirement; (4) reduce the number of parking spots required; and (5) waive the setback requirement on parking lots. (Doc. 1-4 at PageID 24; Doc. 11-1 at PageID 127.)

The variance application was scheduled to be discussed at the Zoning Board meeting on February 16, 2021. (Doc. 11-1 at PageID 128.) Butler County sent by U.S. mail written notice about the variance application hearing for the Property to the adjacent landowners, including the Brookses and the Backs. (*Id.* at PageID 128–129, 131.) Butler County also published a notice in the Hamilton Journal. (*Id.* at PageID 129, 133–136.)

The Zoning Board discussed the variance application for the Property at the February 16, 2021 meeting as scheduled. Only three of the five Zoning Board members, including Alan Daniel, were present at the meeting. (Doc. 1-5 at PageID 26; Doc. 11-1 at PageID 129.) Andrew Zofkie, a development manager, spoke on behalf of DG Germantown in favor of the variances. (Doc. 1-5 at PageID 33.) His testimony is summarized in the Zoning Board minutes as follows:

> Mr. Zofkie stated that they are proposing a new commercial retail development at the corner of Keister Rd. and Middletown Germantown Rd. and indicated they chose the site because it is zoned B-2. He stated the site is actually two properties, one has an existing pole building the other a house. He further stated that with the absence of sewers, where the septic system needs to be located requires shifting the location of the building. He indicated they are asking for five variances. The location shift and the safe operation of delivery trucks were the driving factors for the variances. Mr. Zofkie stated that because of the location and the safe truck turn out the 10% front parking requirement cannot be met. He indicated that they are proposing to erect 6' privacy fencing along two sides to create a buffer in place of the landscaping requirement. The two variances about the setback requirements cannot be met because of the septic location but that there is enough green space with right of way. The 35 parking spots requirement cannot be met, they are proposing 24 spaces and they believe that will be sufficient to properly operate this store.

(*Id.* at PageID 33–34.) Plaintiffs admit that they did not attend the meeting. No one spoke against granting the variances. No one objected that Alan Daniel had a conflict of interest and

3


should not vote because he held a mortgage on, and his son owned, the Property. (*Id.* at PageID 33–35.) The three Zoning Board members in attendance, including Alan Daniel, voted to grant the variances. (*Id.* at PageID 35.)

DG Germantown has taken steps to proceed with the construction of a Dollar General retail store at the Property since the zoning variances were approved. Its parent company purchased the Property from Todd Daniel and satisfied Alan Daniel's mortgage at closing. DG Germantown finalized construction plans, executed agreements with third-party contractors, obtained demolition and building permits, and cleared formerly-existing structures off the Property. (Doc. 14-1 at PageID 307.)

Plaintiffs have objected to the approval of the zoning variances for the Property after the fact. Bret Frank and Karen Frank complained about the Alan Daniel's conflict of interest and the negative impact the Dollar General will have upon their properties to the Butler County Commissioners, the Butler County Development office, the Butler County Prosecutor's office, the Madison Township Board of Trustees, DG Germantown, and an attorney. (Doc. 17-1 at PageID 568–575.) They requested that the variances be revoked and the approval process started again without the participation of Alan Daniel. (*Id.*) The Franks also filed an ethics complaint against Alan Daniel with the Ohio Ethics Commission on May 20, 2021. (*Id.* at PageID 571.) Plaintiffs did not timely appeal the variance decision to the Butler County Court of Common Pleas.

## B.     Procedural History

The Brookses, the Backs, the Tinches, the Franks, and Webner filed this suit against Defendants Butler County, the Zoning Board, and Alan Daniel in his official and individual capacities on October 15, 2021. (Doc. 1.) They asserted a claim for a violation of procedural

4

due process rights under the Fourteenth Amendment against Defendants. (*Id.*) They also filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.) The Court held an informal telephonic hearing on the TRO issue with counsel for both Plaintiffs and Defendants on October 18, 2021. The court issued an Order granting the TRO in part on October 20, 2021 enjoining the variances and any permits issued to enforce the variances. (Doc. 6.) The TRO will expire on November 17, 2021. (*Id.*)

On November 1, 2021, Defendants filed their opposition to the pending Motion for Preliminary Injunction, and DG Germantown moved to intervene. (Doc. 11, 12.) After the Court granted DG Germantown intervention, DG Germantown filed its opposition to the pending Motion for Preliminary Injunction. (Docs. 13, 14.) Plaintiffs then filed their Reply briefs in support of the Motion for Preliminary Injunction on November 7, 2021. (Docs. 16, 17.)

## II. LEGAL STANDARD FOR PRELIMINARY INJUNCTION

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an extraordinary remedy that should be granted only after consideration of the following four factors: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by issuance of preliminary injunctive relief. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021). These are factors to be balanced, not separate prerequisites for granting relief. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014).

"When a party seeks a preliminary injunction on the basis of a potential constitutional

violation, the likelihood of success on the merits often will be the determinative factor." *Hargett*, 2 F.4th at 554 (internal quotation and citation omitted). The plaintiff must establish the likelihood of success on the merits and for establishing jurisdiction. *Id.* The failure to demonstrate the existence of an irreparable injury absent a preliminary injunction can be fatal to a motion for preliminary injunction. *See So. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991). Finally, the public interest lies with the protection of constitutional rights. *Liberty Coins*, 748 F.3d at 690.

## III. ANALYSIS

### A. Initial Findings

Before diving into analysis of the preliminary injunction factors, an overview of relevant legal principles and findings is in order. First, the Zoning Board had discretion whether to grant the variances requested by DG Germantown. The Zoning Resolution gives the Zoning Board authority to pass variances that "will not be contrary to the public interest." Zoning Resolution, § 26.82. The variances sought by DG Germantown were area variances, not use variances. The Zoning Board can grant area variances when there is "proof by a preponderance of the evidence that [the applicant] has or will encounter practical difficulties in the use of [its] property." *Id.* The Zoning Resolution provides seven non-exclusive factors to guide the determination. *Id.*

Second, Alan Daniel's vote as a Zoning Board member in favor of variances on the Property upon which he held a mortgage appears to be a clear-cut violation of Ohio Revised Code § 102.03(D), which prohibits an elected official from voting on matters in which they hold a pecuniary interest. The statute also prohibits a public official from voting for or securing "anything of value for an individual with whom [he] has a close family relationship." Ohio Ethics Comm'n Advisory Opinion 2009-02. Neither Defendants nor DG Germantown have

6

argued that Alan Daniel did not have a conflict of interest or did not violate § 102.03(D) when he voted for the variances for the Property.

Third, if Alan Daniel had not voted at the February 16, 2021 meeting, then the Zoning Board would not have had a quorum to grant the variance application. The Zoning Resolution provides as follows in relevant part:

> Three (3) members of the Board shall constitute a quorum. The Board shall act by resolution; and the concurring vote of three (3) members of the Board shall be necessary to reverse any order or determination of the Zoning Administrator, or to decide in favor on an applicant in any matter of which the Board has original jurisdiction under this Resolution, or to grant any variance from the requirements stipulated in this Resolution.

Zoning Resolution, § 26.22. Only three members of the Zoning Board, including Alan Daniel, were at the meeting, so all three were needed to have a quorum and grant the variances.

Fourth, Ohio law provides a process by which interested parties, such as adjacent property owners, can appeal zoning board variance decisions. The Ohio Revised Code states that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas." Ohio Rev. Code § 2506.01(A). This appeal is "in addition to any other remedy of appeal provided by law." Ohio Rev. Code § 2506.01(B). "For a third-party property owner to appeal [a zoning decision] under R.C. 2506.01, the property owner must at a minimum have been 'directly affected' by a board's decision and must have 'actively participated' in an administrative hearing." *Alesi v. Warren Cty. Bd. of Comm'rs.*, 2014-Ohio-5192, ¶ 19, 24 N.E.3d 667, 674 (2014) (citations omitted). "Adjacent or contiguous property owners who oppose and participate in the administrative proceedings concerning the issuance of a variance are . . . entitled to seek appellate review under R.C. 2506.01." *Willoughby Hills v. C. C. Bar's Sahara, Inc.*, 1992-Ohio-111, 64 Ohio St. 3d 24, 26, 591 N.E.2d 1203, 1205 (1992).

7

An appeal under § 2506.01 must be filed within thirty days after the final decision being appealed. Ohio Rev. Code § 2505.07.

Fifth, despite Alan Daniel's self-serving vote in favor of the variances for the Property in which he held a mortgage, it is not certain that the Ohio common pleas court would have overturned or vacated the vote had an administrative appeal been filed pursuant to § 2506.01. Ohio courts have provided a narrow remedy for a violation of § 102.03:

> [R]eversal or vacation of an administrative decision is not the remedy for a violation of R.C. 102.03; the remedy is to notify the Ethics Commission, who conducts an investigation. If the investigation reveals that there is probable cause to believe that a violation occurred, the Ethics Commission refers the matter to the County Prosecutor. R.C. 102.06."

*Mather v. Springfield Twp.*, No. L-94-196, 1995 WL 302307, at *3 (Ohio App. May 19, 1995); *see also Musto v. Lorain Cty. Bd. of Revision*, 2016-Ohio-8058, ¶ 55, 148 Ohio St. 3d 456, 468, 71 N.E.3d 279, 292 (2016) (quoting and following *Mather*).

Sixth, the availability of an administrative appeal to the court of common pleas pursuant to § 2506.01 does not foreclose a federal due process lawsuit. The Ohio Revised Code recognizes that there might be other remedies available. *See* Ohio Rev. Code § 2506.01(B). Additionally, federal courts have held that claims solely for violation of due process in the zoning context are "immediately cognizable and ripe for review" without pursuing administrative appeals. *Pond Brook Dev., Inc. v. Twinsburg Twp.*, 35 F. Supp. 2d 1025, 1028 (N.D. Ohio 1999) (relying on *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991)). The Sixth Circuit held in *Nasierowski* that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." 949 F.2d at 894. This is because the "injury stemming from the deprivation of procedural due process was immediately sustained and concretely felt, notwithstanding the absence of a 'final' decision." *Id.* With an understanding of

8

these principles, the Court turns to the preliminary injunction analysis.

**B.  Preliminary Injunction Factors**

Plaintiffs have asserted a claim for violation of their procedural due process rights arising under the Fourteenth Amendment to the Constitution. They assert that as adjacent landowners, or as landowners who will suffer a particularized injury from the granting of the variances, they had a procedural due process right to an unbiased Zoning Board making the variance decision for the Property. Defendants and DG Germantown respond that Plaintiffs will not be able to prove their claim on the merits for at least two related reasons: lack of standing and lack of protected property interest.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citation and quotation omitted). Likewise, to prove a procedural due process violation, plaintiffs must first establish that they had protectable property interests. *Wayne Watson Enters., LLC v. City of Cambridge*, 751 F. App'x 760, 763 (6th Cir. 2018) (stating that procedural due process claims require a plaintiff to show that he had a property interest that was deprived); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (stating that "due process protections" are triggered by "cognizable property rights"). Property interests are not created by the Fourteenth Amendment, but rather they are "created and defined by independent sources, such as state law." *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997) (quotation omitted). "In order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a 'legitimate claim of entitlement to it.'" *Braun*, 519 F.3d at 573 (citation omitted). The issue of whether Plaintiffs suffered a concrete and particularized injury for

9

purposes of standing at least overlaps with the issue of whether Plaintiffs have a sufficient property interest, created by state law, to assert a due process claim.

Ohio law recognizes the rights of adjacent landowners, such as the Brookses and the Backs, in zoning situations in several ways. Ohio law provides that county zoning boards must provide notice and a hearing to all interested parties for all matters. Ohio Rev. Code § 303.15. Likewise, adjacent landowners have the right to administratively appeal a zoning decision to the common pleas court pursuant to § 2506.01, at least if they participated in the administrative hearing. *Alesi*, 24 N.E.3d at 674. Adjacent landowners have the right to administratively appeal zoning variance decisions as well. *Willoughby Hills*, 591 N.E.2d at 1205. Non-adjacent landowners have the right to file an § 2506.01 appeal if they suffered a "unique harm that is distinct from the harm suffered by the community at large." *Alesi*, 24 N.E.3d at 674.

Nonetheless, these recognized Ohio statutory rights do not go far enough to provide standing or create a property interest in favor of Plaintiffs in the context of this case. Plaintiffs do not dispute that Butler County provided proper notice about the hearing for Variance Application BZA21-08V by U.S. mail to the adjacent landowners and by publication to other interested persons. Plaintiffs also do not dispute that they did not attend the February 16, 2021 meeting of the Zoning Board and did not voice opposition to the variance application prior to the meeting. As such, Plaintiffs would not have had standing to appeal the zoning variance vote under Ohio law.

To the extent that Plaintiffs suggest that *Nasierowski* provides an avenue for them to file a Fourteenth Amendment due process claim here despite their inability to administratively appeal the variance decision pursuant to § 2506.01, the Court must disagree. The Sixth Circuit in *Nasierowski* held that claims for due process violations in zoning proceedings are immediately

10

cognizable and ripe for review. 949 F.2d at 893–894; *see also Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 915 (S.D. Ohio 2017), *aff'd*, 751 F. App'x 760 (6th Cir. 2018); *Pond Brook Dev.*, 35 F. Supp. 2d at 1028. The Sixth Circuit expressly concluded in that case, however, that the plaintiff company had a property interest to be protected. The company in *Nasierowki* purchased property adversely affected by a previously-unannounced change to a zoning classification, and that change was made after the company had received prior assurance from city officials that its proposed business was a conforming use under the zoning law. 949 F.2d at 891–893. The Sixth Circuit held that the company had property interest in the original zoning classification which had been "securely vested" by its substantial acts—acts such as purchasing the land and submitting a site plan to the city for approval—taken in reliance upon the city's affirmative actions indicating his proposed use conformed to the zoning code. *Id.* at 897.

Conversely, here, Plaintiffs have not established a likelihood that they had a protected property interest in the variance decision sufficient to confer standing or due process protections. The difference is that no party has a claim of entitlement to a variance decision because it is discretionary by nature. As stated above, property interests in a benefit exist only when a person has "legitimate claim of entitlement to it," not a mere unilateral expectation. *Braun*, 519 F.3d at 573. It follows that "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 856 (6th Cir. 2012) (citation omitted). For example, "when a municipality retains the discretion to deny a plaintiff's requested land use, even if all mandatory requirements are met, he does not have the requisite legitimate claim of entitlement or justifiable expectation needed to establish a property interest in a particular use of his land."

*McGuire v. City of Moraine, Ohio*, 178 F. Supp. 2d 882, 892 (S.D. Ohio 2001) (internal quotation omitted).

Plaintiffs, as adjacent and nearby landowners, did not have a legitimate claim of entitlement to having the variance application for the Property granted or denied. In fact, DG Germantown, the owner of the Property, also did not have claim of entitlement to the variance decision. The Zoning Board has discretion under the Zoning Resolution § 26.82 to decide whether to grant zoning variances, a fact which Plaintiffs concede. (Doc. 16 at PageID 428.) Therefore, Plaintiffs had no expectation or claim to entitlement to a zoning variance decision, that is no property right, because the Zoning Board had discretion to grant or deny the variances. *Cf. Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 657 (S.D. Ohio 2016) ("In order to establish an expectation or claim of entitlement, a plaintiff must prove that the state or local governmental actor lacked the discretion to deny the proposed land use, so long as plaintiff complied with all applicable zoning requirements.").

Finally, the Court must note that the lack of procedural due process caused by Alan Daniel's vote in favor of the variances despite his obvious conflict of interest does not itself confer property rights upon persons impacted by the vote. "[A] citizen does not have standing based on his and every citizen's interest in proper application of the Constitution and laws." *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 706 (6th Cir. 2017) (internal citation and quotation omitted). Likewise, a citizen does not have "a fundamental right or liberty interest in having the government make discretionary decisions free from corruption independently from whether the citizen has a separate property or liberty interest at stake." *EJS Properties*, 698 F.3d at 860. Stated differently, "allegations of bias, prejudice, partiality and other improprieties do not establish the existence of such a property interest." *McGuire*, 178 F. Supp. 2d at 892–93.

For these reasons, the Court concludes that Plaintiffs have not established a likelihood of success because they did not have a protected property interest in the discretionary variance approval vote by the Zoning Board sufficient to confer standing or create procedural due process rights.

The Sixth Circuit instructed in *Hargett* that the likelihood of success on the merits often will be the determinative factor in alleged constitutional violation cases. 2 F.4th at 554. Unfortunately for Plaintiffs, that is the case here. No one challenged the Zoning Board's decision by filing a § 2506.01 appeal with the Butler County Court of Common Pleas within thirty days of the decision. It was not unexpected then that DG Germantown moved forward with its plans to develop a Dollar General store on the Property—a store that is conforming use with the B-2 zoning classification—even if it knew that the vote on the variances had been tainted by conflict. The actions of Alan Daniel and the Zoning Board to have allowed Daniel to vote in favor of the variances despite his conflict of interest are offensive. The citizens of Butler County, including Plaintiffs, deserved better from their government representatives.

IV. **CONCLUSION**

Because Plaintiffs have not established a likelihood that they have standing or that they will succeed on the merits, Plaintiffs' Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

_Susan J. Dlott_
Susan J. Dlott
United States District Judge

13